IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 05-14420-B

---

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

OCT - 7 2005

THOMAS K. KAHN
CLERK

Dist. Ct. Dkt. No. 02-00111-CR-T-17-MAP

IN RE:
    GREGORY G. SCHULTZ,

                                        Petitioner.

---

On Petition for Writ of Mandamus to the
United States District Court for the
Middle District of Florida

---

Before: ANDERSON, CARNES, and MARCUS, Circuit Judges

By the Court :

    Gregory G. Schultz, proceeding pro se, filed the instant mandamus petition requesting that this Court dissolve the district court's March 21, 2005, order directing him to cooperate with his counsel and follow his counsel's direction regarding contact with his codefendants. Apparently, Schultz also seeks review of the district court's March 9, 2005, decision to terminate his right to represent himself during his criminal proceedings. Schultz also has filed an "Emergency Motion to Writ of Mandamus to Overturn Order," complaining about the magistrate judge's recent changes to Schultz's conditions of release.

    The U.S. Supreme Court recently summarized the standards that govern petitions for writs of mandamus against a lower court. Cheney v. U.S. Dist. Ct. for Dist. of Columbia, 542 U.S. 367, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004). The Court explained that a writ of

mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." Id. at ___, 124 S.Ct. at 2586 (citation and internal quotations omitted). The Court noted that three conditions must be satisfied before the writ can issue: (1) the party seeking issuance of the writ must have no other adequate means to obtain the relief requested, which ensures that the writ is not used as a substitute for the regular appellate process; (2) the petitioner must demonstrate a clear and indisputable right to issuance of the writ; and (3) the issuing court, in the exercise of its discretion, must be satisfied that the writ is justified by the circumstances of the case. Id. at ___, 124 S.Ct. at 2587.

At the outset, we are satisfied the petitioner has adequate means other than this extraordinary writ with which to seek relief. Moreover, Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) recognized that while a criminal defendant has a Sixth Amendment right to represent himself at trial, that right is not absolute. Faretta, 422 U.S. at 819, 95 S.Ct. at 2533. In Faretta itself, the Court specifically provided that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." Id. at 834 n.46, 95 S.Ct. at 2541 n.46. In addition, a trial court, even over objection of the accused, may "appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." Id. The Court explained that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." Id.

A variety of factors are relevant to the inquiry as to whether a defendant has knowingly and intelligently waived the right to counsel pursuant to Faretta. Fitzpatrick v. Wainwright, 800

F.2d 1057, 1065 (11th Cir. 1986). These factors include, inter alia, a defendant's physical and mental health, the defendant's conduct, and whether the defendant was attempting to delay or manipulate the proceedings. Id. at 1065-68. Because the district court was required to consider these factors in initially granting Schultz leave to represent himself at trial, the court correctly considered these same factors in deciding to terminate his right of self-representation. See also Diaz v. Sec'y Dep't of Corr., 402 F.3d 1136, 1145 (11th Cir. 2005) (finding that appellate counsel was not ineffective for failing to argue that defendant's right to self representation at sentencing was violated where the defendant repeatedly sought to delay and frustrate his criminal trial by changing his mind about his desire to represent himself and accusing the trial judge of bias).

In this case, the record is replete with examples of Schultz engaging in obstructive and dilatory litigation tactics. For example, Schultz has filed repetitive and frivolous motions; repeatedly accused the court and the magistrate of either bias or judicial misconduct; and interfered in the attorney-client relationships of his codefendants and their counsel by filing civil lawsuits in state court purportedly on his codefendants' behalf in order to create artificial conflicts of interest that would necessitate counsels' withdrawal and delay the proceedings. In addition, the record shows that, contrary to the district court's express admonition, Schultz filed a state court civil lawsuit against his court-appointed attorney, John Fernandez, on the eve of his retrial in an apparent attempt to compel Fernandez to move to withdraw (which Fernandez did), and either create an opportunity for Schultz to resume self-representation or, at the very least, delay his retrial.

Moreover, the district court's stated concern that Schultz's deteriorating medical condition would negatively affect his ability to effectively prosecute his defense on his own is amply supported by the record. Before Schultz's reported "blackout" at trial and self-admission to the hospital, the court expressed concern over Schultz's physical condition, stating that it was "very, very close . . . to appointing [Fernandez] to represent [Schultz] . . . [s]o that we will not have these problems." In the week following Schultz's collapse in court, the district court thoroughly investigated Schultz's medical condition, ordering medical examinations to ensure his continuing competency. Thus, the district court correctly recognized the strong possibility that Schultz's multiple sclerosis, a condition unquestionably aggravated by stress, would hinder his ability to prepare a meaningful defense on his own. Notably, the court also was aware of the possibility that Schultz may have taken advantage of his medical condition in order to delay and manipulate the legal proceedings. Dr. Huntley's notation in his neurology report that Schultz had expressed a belief that his severance from the trial of his codefendants was a "legal victory" lends considerable support to that conclusion.

Because the district court had the authority to terminate Schultz's right to self-representation, and did not err in exercising that authority by appointing Fernandez to take over as Schultz's full-time counsel, Schultz's corollary claims that he was denied his First Amendment rights to communicate with his codefendants and their counsel are without merit. The government in its response to this Court's order correctly notes that the district court's March 21 order restricting Schultz's communication was entered after the district court already had terminated his right to self-representation and after he had been severed from the trial of his remaining codefendants. Because Schultz was represented by counsel at that point, the

4

governing rules of professional conduct and the court's own local rules prohibited codefendants' counsel from directly communicating with Schultz and vice versa. See Rule 4-4.2(a), Florida Rules of Professional Conduct ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.");
M.D. Fla. L. R. 2.03(d) (providing that any party for whom a general appearance of counsel has been made shall not thereafter "take any step or be heard in the case" pro se). The communication restrictions placed on Schultz by the March 21 order simply memorialized the traditional parameters of Schultz's rights as a represented party going forward. Further, the court's threat incarceration as a sanction for non-compliance was entirely justified by Schultz's multiple previous attempts to interfere with the attorney-client relationships of his codefendants. On this record, the district court had a legitimate concern regarding Schultz's continued interference with the trial following his severance.

Finally, Schultz's arguments that he was denied due process when the court sua sponte issued the March 21 order stripping him of his right to self-representation and that the language of the order is unconstitutionally vague, are unpersuasive. First, Schultz's due process argument relies on the incorrect premise that the March 21 order rescinded his right to self-representation. As explained in greater detail above, the court actually terminated that right on March 9 after Schultz collapsed in court due to a "blackout" and self-admitted to the hospital on his personal physician's instructions. To the extent that Schultz contends that he should have been given notice of that prior ruling as well, the record reflects that there were numerous conversations during the trial between the court and Schultz where the court expressed its concern with his

physical condition. The court already had stated that it was "very close" to terminating his self-representation even before he suffered his "blackout" episodes. As such, Schultz cannot legitimately contend that he was not given sufficient notice of the court's intention to terminate his right to represent himself.

As for vagueness, the court's instruction that Schultz follow counsel's directions "in every other way" sufficiently apprised Schultz of his responsibilities as a represented party. Notably, Schultz states that he has been practicing law for 30 years and has represented clients in both civil and criminal cases. As such, Schultz knows, or should know, the boundaries of acceptable conduct as a represented litigant.

Accordingly, we find that Schultz has no clear and indisputable right to mandamus relief, and his mandamus petition is hereby **DENIED**. Because Schultz's "Emergency Motion to Writ of Mandamus to Overturn Order," raises new matters wholly outside the scope of his mandamus petition, that motion is **DENIED**.

The stay previously issued by this Court September 29, 2005, is hereby **VACATED**.